1999 SD 72

**Donald EVEN, Petitioner and Appellee,**

v.

**CITY OF PARKER, a South Dakota Municipality, Respondent and Appellant,**

v.

**The Board of Adjustment of the City of Parker, Respondent.**

**Nos. 20516, 20519.**

Supreme Court of South Dakota.

Argued March 22, 1999.

Decided June 16, 1999.

Jeffrey A. Cole of Zimmer, Duncan and Cole, Parker, for petitioner and appellee.

David M. Buechler, Parker, for respondent and appellant.

GILBERTSON, J.

[¶ 1.] Donald Even (Even) brought a verified petition alleging illegality of a decision by the City of Parker Board of Adjustment (Board) pursuant to SDCL 11–4–25 and an application for a writ of certiorari. The trial court, First Judicial Circuit, Turner County, found the Board was estopped from enforcing a zoning ordinance on Even. The Board appeals and Even files notice of review. We affirm.

### FACTS AND PROCEDURE

[¶ 2.] Even and his wife are owners of real property in the City of Parker, South Dakota that they purchased in 1996 upon their marriage. Even is a dairy farmer and his wife is a full-time student. In the summer of 1997, Evens decided to remove an old garage from their property considered by them to be in "poor" condition [1] and build a new garage. Family finances dictated that it be a pole type construction

---

1. Even testified the original garage was in "poor" condition as "the sill was rotting out, the one side of the foundation was falling into the alley, the doors were, I guess, rotten, the roof was bowed."

as that was considered the least expensive and most affordable option. Even was unaware he was required to apply for a conditional use permit to build a "pole type" garage. Apparently, prior to 1996 it was permissible to build pole type buildings in the City of Parker. In that year the City amended its Zoning Regulations to prohibit pole type buildings in residential areas unless a conditional use permit was obtained.

[¶ 3.] Even first orally visited with Mr. Kastner, the City Zoning Administrator, who informed him of various restrictions on the building of garages.[2] The newly enacted prohibition against pole type garages was not mentioned. On September 22, 1997, Even filled out an application for a building permit. The application form, which was drafted on behalf of the City, did not ask whether the proposed building was to be of pole type construction. The application was given to the Zoning Administrator, who reviewed it and issued Even a city building permit for the construction of the garage without further discussion. The Zoning Administrator personally delivered the permit to the Even residence and left it in Even's front door.

[¶ 4.] When he received the building permit, Even began buying materials for the garage and incurred approximately $4,470.00 in building material expenses. To save money he ordered a customized kit of materials from a supplier who had a business relationship with Even's brother. However, since it was a customized kit, the supplier would not accept a return of the materials unless another customer ordered the exact same kit. The materials were delivered by the supplier to the Even residence. On September 26, 1997, the Zoning Administrator re-visited the Even property and told Even the proposed garage was of "pole type" construction and under the zoning ordinance he could not build the garage.

[¶ 5.] A family member later told the Evens they might be able to build the garage if they procured a conditional use permit. On October 6, 1997, Even completed another Building Permit Application for a conditional use permit. The City Planning and Zoning Board of Adjustment (Board) met to consider Even's application on October 23, 1997. The Board voted to deny Even's application. The Board never made any written findings as to Even's second application. However, the Board failed to revoke the previously issued building permit.

[¶ 6.] Even filed the verified petition pursuant to SDCL 11–4–25[3] and for a writ of certiorari which commenced this action against the Board. His claims were heard by the trial court, which found the City was estopped from enforcing the provisions of the zoning ordinance. The City appeals raising the following issues:

1. Whether the trial court erred in estopping the City of Parker from enforcing the zoning ordinance on Even.

2. Whether Even was required to exhaust administrative remedies prior

---

2. The Zoning Regulations for the City of Parker, South Dakota, which were included in the record provide:

> No new development, change of use, moving in/moving out of structures, demolition, or other action which may be regulated by the provisions of this ordinance including use, height, number of occupants, lot area ... shall occur without a Building Permit issued by the Zoning Administrator.

City of Parker, Zoning Ordinance 4.04.01. Not only did Even need a building permit to build the new garage, he also needed one to move the old garage.

3. SDCL 11–4–25 states:

> Any person or persons, jointly or severally, aggrieved by any decision of the Board of Adjustment, or any taxpayer, or any officer, department, board, or bureau of the municipality, may present to a court of record a petition duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.

to commencing this action in circuit court.

Even filed notice of review raising the following issues:

3. Whether the inclusion in the zoning ordinance of a provision allowing buildings of pole construction as a use permitted with a conditional use permit is a legislative finding that the use is generally compatible with adjoining properties and other property in the zoning district.

4. Whether the trial court erred in its decision that the Board did not abuse its discretion in denying Even's application for a conditional use permit because the building was not compatible with adjoining properties.

5. Whether the Board's denial of Even's application for a conditional use permit is an abuse of discretion because the Board based its decision on an incorrect legal standard.

6. Whether the Board's failure to enter findings of fact and conclusions of law renders its decision an abuse of discretion and arbitrary and capricious as a matter of law.

7. Whether the zoning ordinance, which makes a building of pole construction a conditional use, is vague and overbroad and deprives Even of due process under the South Dakota and United States Constitutions.

8. Whether the City of Parker Zoning ordinance is ambiguous in its reference to making a building of "pole construction" a conditional use in a residential district.

## STANDARD OF REVIEW

[¶ 7.] We review a decision by the Parker Board of Adjustment, made pursuant to the provisions of SDCL 11–4–25 through 11–4–29, to determine whether the order of the Board is supported by substantial evidence and is reasonable and not arbitrary. *Schrank v. Pennington County Bd. of Commissioners*, 1998 SD 108, ¶ 18, 584 N.W.2d 680, 683 (citing *Graves v. Johnson*, 75 S.D. 261, 266, 63 N.W.2d 341, 344 (1954)). We review it in the same manner as the circuit court, unaided by any presumption of the correctness of the circuit court's determination. *Hamerly v. City of Lennox, Bd. of Adj.*, 1998 SD 43, ¶ 10, 578 N.W.2d 566, 568 (citing *Olson v. City of Deadwood*, 480 N.W.2d 770, 774–75 (S.D.1992)).

[¶ 8.] As to the petition for writ of certiorari, our scope of review is:

Zoning ordinances are interpreted according to the rules of statutory construction and any rules of construction included in the ordinances themselves. *Cordell v. Codington County*, 526 N.W.2d 115, 117 (S.D.1994). *See also* 83 Am.Jur.2d *Zoning and Planning* § 698 (1992). The interpretation of an ordinance presents a question of law which we review de novo. *See Matter of Estate of Gossman*, 1996 SD 124, ¶ 6, 555 N.W.2d 102, 104 (citing *Sioux Valley Hosp. Ass'n v. State*, 519 N.W.2d 334, 335 (S.D.1994); *King v. John Hancock Mut. Life Ins. Co.*, 500 N.W.2d 619, 621 (S.D.1993)). When interpreting an ordinance, we must assume that the legislative body meant what the ordinance says and give its words and phrases plain meaning and effect. *See Nilson v. Clay County*, 534 N.W.2d 598, 601 (S.D.1995).

Because this matter was presented to the trial court on certiorari, our scope of review is limited to the questions of whether the inferior courts, officers, boards, and tribunals had jurisdiction and whether they have regularly pursued the authority conferred upon them. *Save Centennial Valley Ass'n Inc. v. Schultz*, 284 N.W.2d 452, 454 (S.D.1979). "When such courts, officers, boards, or tribunals have jurisdiction over the subject matter and of the party, *their action will be sustained unless in their proceedings they did some act forbidden by law or neglected to do some act required by law.*" *Id.* (citing *State v. State Board*

*of Assessment and Equalization,* 3 S.D. 338, 53 N.W. 192 (1892)).

*Peters v. Spearfish ETJ Planning Com'n,* 1997 SD 105, ¶¶ 5–6, 567 N.W.2d 880, 883. (Emphasis added).

[¶ 9.] The standard to be applied when reviewing the findings of fact is that a finding shall not be set aside unless clearly erroneous. SDCL 15–6–52(a). Clear error exists only when upon a review of all the evidence in the record, we are left with a definite and firm conviction a mistake has been made. *Cordell,* 526 N.W.2d at 116. The scope of review as to whether an equitable estoppel exists is fully reviewable as a mixed question of law and fact. *Matter of Loomis,* 1998 SD 113, ¶ 7, 587 N.W.2d 427, 429.

## ANALYSIS AND DECISION

[¶ 10.] **1. Whether the trial court erred in estopping the City of Parker from enforcing the zoning ordinance on Even.**

[10] [¶ 11.] The Board claims the trial court erred in estopping it from enforcing the zoning ordinance against Even. We have applied estoppel against public entities in "exceptional circumstances to 'prevent manifest injustice.'" *Smith v. Neville,* 539 N.W.2d 679, 682 (S.D.1995) (citing *City of Rapid City v. Hoogterp,* 85 S.D. 176, 180, 179 N.W.2d 15, 17 (1970)). *See also Hanson v. Brookings Hosp.,* 469 N.W.2d 826 (S.D.1991); *Rhodes v. City of Aberdeen,* 74 S.D. 179, 50 N.W.2d 215 (1951); *City of Colome v. Von Seggern Bros. & Ludden,* 56 S.D. 390, 228 N.W. 800 (1930); *Tubbs v. Custer City,* 52 S.D. 458, 218 N.W. 599 (1928); *City of Deadwood v. Hursh,* 30 S.D. 450, 138 N.W. 1122 (1912); *Missouri River Telephone Co. v. City of Mitchell,* 22 S.D. 191, 116 N.W. 67 (1908). However, we do not favor estoppel against a public entity and will apply it only in extreme cases.

*Hoogterp,* 85 S.D. at 179, 179 N.W.2d at 17.

[¶ 12.] "The doctrine of equitable estoppel or estoppel in pais is bottomed on principles of morality and fair dealing and is intended to subserve the ends of justice." *Id.* at 179, 179 N.W.2d at 16. When considering the application of equitable estoppel, each case is dependent on application of the doctrine to the specific facts. *Id.* When applying the doctrine to "municipal corporations in matters pertaining to their governmental functions . . . . [t]he basis of its application . . . is . . . municipal officers . . . have taken some affirmative action influencing another which renders it inequitable for the municipality to assert a different set of facts." *Id.* at 180, 179 N.W.2d at 17 (citation omitted). "More than municipal acquiescence . . . should be required to give rise to an estoppel." *Id.* (Citation omitted). "The conduct must have induced the other party to alter his position or do that which he would not otherwise have done to his prejudice." *Smith,* 539 N.W.2d at 682.

[¶ 13.] An application of this doctrine to the case at hand establishes that Even applied to the Board for a building permit. The Zoning Administrator supplied the form Even used. Even completed the application form authored by the City in which it could have asked any information from the applicant it thought relevant. He returned the completed form to city officials along with a sketch of the new garage. He was never told that his application was lacking in any manner. After a review, the Zoning Administrator approved and issued a building permit. The Zoning Administrator then left the building permit in the door at Even's home. After receiving the building permit, Even went out and purchased building materials in the amount of $4,470.00. It was uncontested at trial that under normal circumstances, he could not return the materials to the supplier once they were delivered.[4] It was only after Even received

4. The dissent declares "[t]here was no satisfactory showing that these building materials

the materials that the Zoning Administrator, while visiting the building site, made inquires he should have made to begin with regarding the materials used to construct the garage. The Zoning Administrator admitted he should have been more thorough in his investigation of Even's application for a building permit.

[¶ 14.] The City did not have a duty to call to Even's attention the fact he could not build a garage of pole type construction under the terms of the zoning ordinance. *Smith*, 539 N.W.2d at 681. Nevertheless, the City may not, through its agents, affirmatively create an objectively reasonable impression in an applicant that he has fully complied with all zoning requirements and then proceed to withdraw permission after the applicant has taken steps towards construction which result in a substantial detriment to the applicant. *Erickson v. County of Brookings*, 1996 SD 1, ¶ 15, 541 N.W.2d 734, 737.

[¶ 15.] In our prior case authority concerning estoppel against a government entity, we have never set a dollar amount as a threshold requirement to obtain equitable relief from the courts of this state. We decline to do so today. The fact this building only put $4,470.00 at risk for the person of humble financial means is of as much importance to this Court as a wealthy individual who decides to build an opulent brick carriage house and has no concern for its cost.[5]

---

were not useable or returnable and refundable." There is no basis in the record to support this unfounded claim. It was not an issue at trial. Even testified on direct:

Q: And did you have a discussion with the seller of that property [the building supplies]?
A: Yes, I did.
Q: What did he indicate to you?
A: He told me in order for him to take it back, he would have to have somebody that wanted the same exact shed that I wanted.
Q: Did he have anybody available like that?
A: No he did not.

Thereafter the sole mention of the subject on cross by the City consists of the following:

Q: Now this person you talked to, as far as returning the package, is that your brother then?
A: No. I actually called the guy he orders from. I called him and got the number to talk to him personally
Q: How was your brother involved? Does your brother work for Western Lumber?
A: He constructs a lot of their buildings, yes.
Q: What is your brother's occupation?
A: Farmer.
Q: But he subcontracts for Western Lumber then?
A: You could say that, I guess.
Q: And he just ordered this for you as a favor?
A: Yes, he did.

In the City's proposed findings of fact it did not even mention, let alone challenge, Even's claim that the materials were non-refundable under these circumstances. The trial court, after hearing Even testify in person and all the City's evidence, entered the following finding of fact via its incorporated memorandum opinion: "Mr. Even had placed himself in a position of having the materials to construct a building, which could not be returned, when he was told he could not erect the building pursuant to his approved building permit."

At oral argument counsel for the City conceded there were no proposed findings by the City on the issue of Even's veracity and there should have been if the City wanted to raise the point on appeal.

"The legal duty of the trial court to enter findings in an equity case consistent with the undisputed testimony of a witness is the same as the duty of the court to direct a verdict in a jury case, according to such testimony." *Crilly v. Fitzsimmons*, 73 S.D. 646, 648, 48 N.W.2d 62, 63 (1951) (citing *State v. Nieuwenhuis*, 55 S.D. 636, 227 N.W. 84 (1929)).

5. The Court's equitable powers are for protection of homeowners' property interests. However, given the requirement that an estoppel is applied only in exceptional circumstances to prevent manifest injustice, *Sioux Valley Hosp. Ass'n v. Tripp County*, 404 N.W.2d 519 (S.D.1987), there is no basis to judicially intervene to protect de minimus property losses. In the case now before us the City presents no claim that the loss sustained by the Evens was de minimus. Despite concerns of the dissent that "this is the skimpiest showing of estoppel against a municipality in the legal history of mankind," our decision is based on solid precedent as in *Erickson* we unanimously upheld an estoppel against Brookings County over a hospital bill of $7,585.26. 1996 SD 1, 541 N.W.2d 734.

[¶ 16.] The City further fails to properly identify what perceived evil it intended to prevent by precluding construction of this type of structure. Two Board members testified they voted against the second permit because a steel building did not fit in a residential neighborhood nor would it fit with the other buildings in the Even neighborhood. The trial court's findings of fact determined Parker has pole buildings located in areas zoned residential and there are several steel buildings in Even's neighborhood. From Even's property there is a steel roofed carport across the street, a small steel building in the yard of an adjacent neighbor, two large steel buildings within a block of his home and a steel trailer house within thirty yards of his property line. The City cannot be heard to complain of an improper balancing of the equities by the trial court under such circumstances.

[¶ 17.] As established above, the facts of this case constitute affirmative action by the Board and its agent, the Zoning Administrator, which would cause an objectively reasonable person to believe they had complied with the city zoning requirements and had a valid permit. To prohibit Even from building his garage would work an injustice on him. Based upon the forgoing analysis, we affirm the trial court's determination. The Board is estopped from enforcing its zoning ordinance on Even.

[¶ 18.] The effect of the estoppel does not render the City's zoning ordinance a nullity. It is limited to upholding the permit. The Evens must still fully comply with the other relevant provisions of the ordinance not applicable to the estoppel holding.

[¶ 19.] **2. Whether Even was required to exhaust administrative remedies prior to commencing this action in circuit court.**

[¶ 20.] At oral argument the City conceded that no exhaustion was required in this case. We affirm.

## CONCLUSION

[¶ 21.] Based on the circuit court's holding that the City is estopped from enforcing its ordinance as to the building permit, we affirm the circuit court. The Board's decision was arbitrary, unreasonable and not supported by substantial evidence. In so doing it is unnecessary to address Even's notice of review issues.

[¶ 22.] MILLER, Chief Justice and AMUNDSON, Justice concur.

[¶ 23.] SABERS and KONENKAMP, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 24.] Within two days of receiving the mistakenly issued building permit, Even was clearly advised that he could not build a "pole type" construction garage under the zoning ordinance. At that time, he had approximately $4,470.00 in building materials on the job site. There was no satisfactory showing that these building materials were not useable or returnable and refundable. Even if the building materials were the poles themselves, they would have value elsewhere.

[¶ 25.] Yet, the majority determines that the people and the city of Parker are estopped from challenging the mistakenly issued building permit.

Estoppel against public entities is little favored and will only be applied when exceptional circumstances demand its application to prevent manifest injustice. *Sioux Valley Hosp. Ass'n v. Tripp County*, 404 N.W.2d 519 (S.D.1987); *City of Rapid City v. Hoogterp*, 85 S.D. 176, 179 N.W.2d 15 (1970). The party seeking protection of the estoppel doctrine bears the burden of establishing the existence of the necessary exceptional circumstances. *Sioux Falls Constr. Co. v. City of Sioux Falls*, 297 N.W.2d 454, 459 (S.D.1980); *Hoogterp*, 85 S.D. at 179–80, 179 N.W.2d at 17.

*Rios v. S.D. Dept. of Social Services,* 420 N.W.2d 757, 760 (S.D.1988).

[¶ 26.] Contrary to the implication made by the majority opinion, the issue is not the dollar amount involved, but whether Even met his burden of showing a substantial harm as a result of some affirmative action by the Board. The majority opinion cites to *Erickson v. County of Brookings,* 1996 SD 1, 541 N.W.2d 734 as "solid precedent" for its decision. However, the county in *Erickson* was estopped from raising lack of notice to the Attorney General as an affirmative defense because of "intended deception." 1996 SD 1 at ¶ 15, 541 N.W.2d at 737. Although the Zoning Administer admitted he should have more carefully reviewed Even's application for a building permit, there has been no claim that the Board or City engaged in any intentional deception to entice Even into purchasing building supplies. See *Smith v. Neville,* 539 N.W.2d 679, 682 (S.D.1995) (stating: "Generally, to work an estoppel, there must be some intended deception in the conduct or declaration of the party to be estopped."). I submit that the facts of this case do not present an "exceptional circumstance" justifying the application of estoppel to a public entity.

[¶ 27.] I further submit that this is the skimpiest showing of estoppel against a public entity in South Dakota legal history and that we will regret it. Therefore, I dissent.

[¶ 28.] KONENKAMP, Justice, joins this dissent.